# Wheeler et al. *v.* London Guarantee & Accident Co., Appellant.

*Insurance — Automobile insurance — Liability for injuries to third persons—Unloading truck—Terms of policy.*

1. Where a policy of automobile insurance provides by its terms indemnity for injuries sustained "while loading and unloading" motor vehicles insured under it "incidental to the business" of the insured, and the insured by a contract undertakes to deliver steel girders wholly inside of a building under construction, the insurance company will be liable for damages paid for injuries to a boy resulting from a girder toppling over him, after it had been unloaded across the sidewalk from the truck, and was being dragged within the building, by the help of the motor power of the truck withdrawn and stationed across the street.

2. In such a case it cannot be argued that, as the girder by which the boy was injured had been thrown upon the sidewalk before the accident, that as it was not then upon the truck, and that as the truck stood at the time across the street from the place of operation, there was no longer connection of the girder with the truck.

Mr. Justice SIMPSON filed a dissenting opinion, in which Mr. Chief Justice MOSCHZISKER concurred.

Argued December 6, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 281, Jan. T., 1927, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1925, No. 3694, on verdict for plaintiff, in case of Andrew Wheeler et al., copartners, trading as Morris, Wheeler & Co. v. London Guarantee & Accident Co., Limited, of London, England. Affirmed.

Assumpsit on policy of automobile insurance. Before AUDENRIED, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiffs for $9,230.84. Defendant appealed.

*Error assigned* was refusing judgment for defendant n. o. v., quoting record.

*Wm. W. Smithers*, for appellant.—The loss suffered by plaintiff for the injuries to the McCartney boy was not "a liability imposed by law" for an accident arising "by reason of," that is, caused by, the use of the automobile insured and the trial judge should have so held, there being no dispute on the facts: United States v. Cramp, 206 U. S. 118; Nirdlinger v. Tel. Co., 245 Pa. 453; Bruggeman v. City of York, 259 Pa. 94; Elliott v. Allegheny Co. Light Co., 204 Pa. 568; Hoke v. Light & Power Co., 284 Pa. 112.

The insured automobile at the time of the accident was not being used in the transportation or unloading of materials of plaintiff: Levington v. Ins. Co., 267 Pa. 448.

*M. Hampton Todd,* for appellee.—The language of the policy does not attempt to limit the appellant's liability to accidents wherein the motor truck directly causes the injury. The language used is much broader, it extends

to and includes accidents which shall happen while the truck is being used in the transportation of merchandise incidental to appellees' business of iron and steel merchants: Western Ins. Co. v. Cropper, 32 Pa. 351; Teutonia F. Ins. Co. v. Mund, 102 Pa. 89; Humphreys v. National Benefit Assn., 139 Pa. 264; Norlund v. Ins. Co., 282 Pa. 389.

OPINION BY MR. JUSTICE FRAZER, January 30, 1928:

Plaintiffs, appellees here, in an action of assumpsit declared a breach of the terms of an automobile insurance policy, issued to them by defendant, whereby they were obliged to pay a verdict for personal injuries sustained by a boy while stepping over a large steel girder which extended from the entrance of a building upon and over a sidewalk; the girder having been unloaded from plaintiffs' insured motor truck. In accordance with a contract entered into by plaintiffs with a firm of builders to fabricate, deliver and erect a structural steel garage building on East Clearfield Street in the City of Philadelphia, plaintiffs transported to this building, then in course of construction, by means of a truck and trailer, both vehicles being covered by the policy issued by defendant company, appellant here, two steel girders, weighing respectively 10,000 and 7,000 pounds, the material to be unloaded and delivered inside of the garage being erected. In the effort to deliver the girders at the proper place, the wheels of the trailer sank so deeply into the soft earth within the structure that neither of the vehicles could enter entirely within the building nor could they be moved to the outside again, without removing the girders. The steel beams were then taken from the trucks and placed on the ground, one end of each extending inside the garage building and the other end projecting about six feet upon and across the sidewalk. The driver of the truck, a regular employee of plaintiffs, finding it impossible to deposit the girders at the designated location within the structure by means

of the appliances he had at hand, so informed his employers by telephone, and in response to his message, their superintendent was sent, with a service car and appliances to complete delivery by placing the girders wholly inside the building. By the means thus available and by using the insured truck and its motor power, the lighter girder was, with little difficulty dragged completely within the building. The removal of the heavier one was more difficult, requiring it to be jacked up, and placing planks and rollers under it to facilitate its removal from the sidewalk. While this work was in progress and the girder still extended over the sidewalk, three small boys approached, intending to step over the obstruction. As one, McCartney, trod upon the girder, it began to rock and as he stepped back to the sidewalk, the girder toppled over and fell on his foot, crushing it to such extent that amputation became necessary. In a subsequent suit damages to the amount of $8,235.70 were recovered by the boy and his father from appellees, who paid the amount of the verdict. The insurance company declined to take part in the defense. This action was brought to reimburse plaintiff for the damages paid in the McCartney Case. A verdict was rendered in plaintiffs' favor and on refusal of the court below to enter judgment n. o. v. for defendant, this appeal followed.

Defendant here contends that the accident to the boy, which gave rise to plaintiffs' losses, was not such as was covered by the provisions of the insurance policy. It argues that, as the girder by which the boy was injured had been thrown upon the sidewalk before the accident, and was not then upon the truck which stood at the time across the street from the place of operation, there was no longer connection of the girder with the truck. The insurance policy in question, reproduced in the record of the case, plainly provides by its terms indemnity for injuries sustained "while loading and unloading" motor vehicles insured under it, and fur-

ther provides that the "above cars of the commercial type will be used for transportation of materials and/or merchandise incidental to the business" of the insured. Unquestionably at the time of the accident plaintiffs were actually engaged in the transportation and delivery of merchandise and materials incidental to their business. The process of the transportation was commenced by loading at the factory the two steel girders on the truck and trailer, both insured under the policy, and was to be completed by delivery of the girders upon a space within the garage building. We think no reference to authorities or decisions is required to support here the elemental principle that this particular instance of transportation and delivery could not be completed, in the absence of direct or implied orders or directions to the contrary, until the merchandise was unloaded and delivered from the truck and trailer inside the garage building where intended for use, and indeed this was the explicit direction given by the bricklayer foreman to plaintiffs' driver at the time he reported the arrival of the girders. He was told they "had to go on the inside" and it is not shown that the bricklayer was without authority to give such direction. It certainly cannot then be sensibly contended that, when the girders were thrown from the motor vehicles which brought them, with one part lying inside the building and the other extending out over and obstructing the sidewalk, they were actually transported, unloaded and delivered at and upon the location designated and where intended to be used, and that the transportation and delivery was completed according to contract. Manifestly it was not considered so by plaintiffs' truck driver nor by plaintiff company itself, as shown by the telephone call for help by the driver and the prompt arrival of the superintendent from the factory with a service car and block and tackle to complete the delivery.

We come now to defendant's contention that the insured truck, which with the trailer carried the girders

to the garage structure, had no connection with the accident to the boy inasmuch as at that moment plaintiffs' girder was not on the truck, nor was being loaded or unloaded therefrom, and that under such circumstances the accident was not within the scope or terms of the policy. Plainly the terms of the policy in question cover accidents occurring "by reason of ownership or maintenance" of the vehicles it insures, also occurring in "the use thereof," and stipulating that such vehicles may be used for the transportation of materials and merchandise incidental to the business of insured. If defendant company is to escape liability under its policy, there must have arisen, during the transportation and delivery of the girder by which the boy was injured, a situation by which the service and use of the truck, as well as the truck itself, was entirely and actually severed and disconnected from the active operations of dragging the girder inside the building to the designated location. This situation, defendant argues, was created by the fact that at the time of the accident the girder was no longer upon the truck which stood across the street from the garage and not in use. The undisputed testimony of the driver who brought the girders from the factory and of the superintendent who came with the block and tackle to aid in completing delivery, prove that defendant's position is wholly untenable. The latter's testimony shows the truck was continuously and directly connected with the work and operations of unloading and delivering the girders previous to, during and immediately following the injury to the boy. The vehicle was an indispensable agency in the work, under the circumstances, and as such was at no time disconnected from it. It is true, the truck, at the time of the accident to the boy, was stationed across the street opposite and near to the work of removing the girder from the sidewalk, but that it was at that time no longer an active factor in the operations is a claim wholly unjustified by the fact that three successive times

this truck, as an essential part of the operations, was
stationed on the street, each time with its motor run-
ning; and as often, after brief time, used as the main
instrument to drag the girders into the building and
thus complete the unloading and delivery of the mer-
chandise. It stood on the street the first time after the
driver had disconnected it from the trailer and had used
it in an ineffectual effort to draw the girders inside the
building; the second time while a new rope was being
procured to replace one which broke during the use of
the block and tackle; and, finally, it was stationed
across the street a few feet from the girder by which the
boy was injured, with its motor still running and in
continued readiness for use, while the planks and
rollers were being placed under the girder. Imme-
diately upon completion of this preparatory work the
truck was used successfully to pull the second girder
into the building. It will be noted that there was no
other motor power used or attempted to be used except
that furnished by the truck in question. It was this
truck which, by means of the block and tackle, pulled the
first girder into the garage and it was the same truck
which pulled in the second girder. From the moment
that operations began for the removal of the girders into
the building, the truck was the chief and wholly essen-
tial factor in the work, and, during the entire period and
at the moment of the accident, its motor was either fur-
nishing the power with which to drag the girders or,
during brief delays occasioned by preparatory work,
was kept running and in close proximity for the same
purpose. To say therefore that the truck was no longer
connected with the work of transportation and delivery
because the girder was not on it and because it stood
briefly a few feet away, is illogical and cannot be ac-
cepted. It seems to us a misapplication of words,
under the circumstances in this case, to claim that the
girders were unloaded and delivered when thrown from
the truck and trailer, partly within and partly outside

the garage building. If these vehicles bearing the merchandise had thus sunk into the mire half a mile distant from the place of delivery, and required that the girders be there "dumped" upon the ground, it might of course be said that they were "unloaded"; but it is quite certain that the purchasers of the girders would emphatically disclaim the idea that "unloading" under such conditions was in accordance with the agreement and would naturally demand that there be another "loading" and followed by another and a proper "unloading" at the place of delivery arranged beforehand. We reach the conclusion then that whether the truck may be considered to have been unloaded or not, it was in active operation and use at the time of the injury to the boy, that the accident occurred in the course of the transportation of plaintiffs' merchandise and that the loss to which the accident gave rise was one against which defendant insurance company was bound to indemnify plaintiffs.

Judgment affirmed.


DISSENTING OPINION BY MR. JUSTICE SIMPSON:

Apparently the majority opinion is based on the fact that the truck and trailer were to be "used for transportation of materials and/or merchandise incidental to the business" of the insured. This is true; but the liability of defendant was nevertheless expressly limited to accidents "which should happen in connection with the use and operation in plaintiff's business of [those vehicles] including therein the loading and unloading" of them. These words are plain and unambiguous; yet the majority opinion wholly ignores them, and holds defendant liable for an accident which did not arise "in connection with the use and operation" of the truck or trailer, or in the "loading and unloading" of either of them. On the contrary, at the time of the accident, they were standing idle on the opposite side of the street from the place where the accident happened, through

the negligence of plaintiffs' employees, and neither was then being used, operated, loaded or unloaded. The fact that they had *previously* been used in hauling the girder to that place, and that the truck was *thereafter* used, with other appliances, in drawing the girder further into the building, does not make the accident one which happened "in connection with the use and operation" of the truck or trailer, or with their "loading and unloading." I would reverse and enter judgment for defendant non obstante veredicto.

Mr. Chief Justice MOSCHZISKER concurred in the dissent.