## Clark v. United Steel Barrel Co.

*Joseph S. Lord, 3rd*, for plaintiff.

*Lynn L. Detweiler*, for defendants.

*Arthur B. Walsh, Jr.*, for garnishee.

GRIFFITHS, J., August 17, 1956.—This case was presented to us on defendant's motion for judgment on the pleadings against garnishee.

Two issues are raised by the interrogatories of defendant, United Steel Barrel Company, and the answers of garnishee, Central Surety and Insurance Corporation. The first pertains to the applicability of the term "insured" under a policy of automobile insurance to a certain tortfeasor. The second respects the provision of the policy which excludes certain classes of injured persons from the coverage afforded by the policy.

Plaintiff, Clark, was an employe of Reader Brothers, Inc., the named insured in the policy. While thus employed as a truck driver, together with his helper, Harkins, he was in the course of delivering 35 carboys of 15-gallon glass bottles of sulphuric acid to the plant of United Steel Barrel Company. Parker, an employe of United Steel, assisted Clark and Harkins in removing the carboys from the Reader truck. Through Parker's negligence, Clark was injured. The first question before us is whether Parker is included in the "omnibus insured" clause of Reader's automobile insurance policy. This policy was issued to Reader by garnishee, Central Surety.

Clark originally sued United Steel on the doctrine of respondent superior as far as Parker was concerned,

he being one of United Steel's employes at the time his negligent act caused injury to Clark. United Steel joined its own employe, Parker, as an additional defendant on the theory the actual tortfeasor is responsible for his wrong to anyone secondarily liable, such as United Steel, his employer. At the original trial, before Judge Hagan of this court, a consent verdict in the amount of $7,700 was entered for Clark against United Steel and an identical verdict over was also entered in favor of United Steel against Parker. Judgments were entered on the verdicts. United Steel has paid its verdict to Clark, plaintiff, and has brought garnishment proceedings against the Central Surety, which insured the truck of Reader Brothers, plaintiff Clark's employer, on the theory, as we have said, that Parker, against whom United Steel has a judgment, is covered under the "omnibus insured" clause of Central Surety's policy to Reader.

The policy in question provides as follows:

"III. Definition of Insured. The unqualified word "Insured" includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission . . .

"Conditions

"4. Purposes of Use Defined.

"(c) Use of an automobile includes the loading and unloading thereof."

There is no issue raised as far as permission by the named insured, Reader Brothers, is concerned, and we must, therefore, assume that Parker had at least implied permission from the insured to assist in the manner he did.

The hub of the first question presented is whether Parker was "unloading" the truck at the time.

After Clark had placed the truck in position for unloading at the plant of United Steel, he left the vehicle to go to the men's room. Upon his return, he observed that his helper Harkins had already placed a bottle of the acid on a fork-lift truck, which Parker was operating. The fork-lift was owned by United Steel. It contained two horizontal prongs which can be moved vertically and brought together like pincers to hold an object. Thus an article on a truck can be "pinched" by the fork and lowered from the truck, carried to another point and lowered to the ground. After the first bottle had thus been removed by Parker's operation of the fork-lift truck, Parker, before returning for a second bottle, had a "pallet," a 3′ x 5′ wooden platform, placed upon the prongs of the fork-lift. Thus upon the platform could be placed six carboys at a time instead of transporting a single carboy in the "pincers." The platform, however, was simply laid on the prongs, unfastened in any manner whatsoever.

Parker at all times remained in the seat of the fork-lift, operating the same. His hands at no time touched a carboy, nor did he in any way place a carboy from the Reader truck to the platform or pallet which he had caused to be placed on the prongs of the fork-lift. Harkins placed the second carboy removed from the Reader truck onto the middle of the unfastened pallet, the first carboy already having been carted away. Clark, plaintiff in the original action, started to move this single carboy, then on the pallet, from the middle to a side in order to bring more carboys onto the pallet. As he was in the act of so doing, the weight thus produced on one side of the unattached pallet, which was not counterbalanced on the other side, caused the pallet to fall to the ground, bringing plaintiff and the carboy of sulphuric acid with it. The carboy broke over the body of plaintiff, severely burning him for which he

has now recovered $7,700. Parker's negligence, admitted by United Steel and Parker himself, was his failure to select a proper platform and his failure to warn plaintiff of the impending danger in the use of the one he did select.

Was Parker unloading the Reader truck at the time of this unfortunate accident? If he was, then, as far as the answer to this question is concerned, garnishee, Central Surety, that insured the Reader truck, should pay United Steel for the judgment it paid for Parker, the actual tortfeasor.

As was said by our Superior Court in Ferry v. Protective Indemnity Co. of New York, 155 Pa. Superior Ct. 266, 269 (1944) :

"The 'loading and unloading' clause is only an extension of the ownership, maintenance and use clause in the policy. To bring the accident within the 'loading and unloading' clause of the policy there must be a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading; or it must have been an active factor in the operation. See *Wheeler et al. v. London Guarantee & Accident Co.*, 292 Pa. 156, 140 A. 855."

In the Wheeler case, cited as authority by the Superior Court in the Ferry case, our Supreme Court said at page 160:

"The process of the transportation was commenced by loading at the factory the two steel girders on the truck and trailer, both insured under the policy, and was to be completed by delivery of the girders upon a space within the garage building. We think no reference to authorities or decisions is required to support here the elemental principle that this *particular instance of transportation and delivery could not be completed,* in the absence of direct or implied orders or directions to the contrary, *until the merchandise*

*was unloaded and delivered from the truck and trailer inside the garage building where intended for use,* and indeed this was the explicit direction given by the bricklayer foreman to plaintiffs' driver at the time he reported the arrival of the girders." (Italics supplied.)

Garnishee, Central Surety, has also cited the case of Stammer v. Kitzmiller, 226 Wis. 348 (1937), which is cited with approval by the Superior Court in the Ferry case. There the Supreme Court of Wisconsin said at page 352:

"When the goods have been taken off the automobile and have actually come to rest; when the automobile itself is no longer connected with the process of unloading; and when the material which has been unloaded from the automobile has plainly started on its course to be delivered by other power and forces independent of the automobile and the actual method of unloading, the automobile then may be said to be no longer in use."

Using the test of the Ferry case, we find there is a definite connection between the accident and the use of the vehicle insured, for the carboy was being removed from the insured truck to the platform. The fact it was actually on the platform when it fell does not separate it from the transaction of unloading.

The Wheeler case test asserts that the particular instance of transportation and delivery *is not completed* until the merchandise is unloaded *and delivered* from the truck to the place where it is intended to be used. This would require the carboy here involved not only to be taken from the insured truck and placed on the fork-lift platform but further removed from the fork-lift platform to the position in United Steel's plant where it comes to rest prior to its intended use. This requirement must be met before it can be said the unloading was completed. Clearly, it was not fulfilled in the case here presented.

Even adopting the language of the Stammer case in its broadest sense, we cannot say that the Reader truck was "no longer connected with the process of unloading." Only two of 35 carboys had been unloaded. Further, each carboy cannot be regarded as a separate unloading transaction. The removal of all 35 was a single act of unloading and until all had been unloaded the words of the Stammer case, "When the goods have been taken off the automobile and have actually come to rest," have no applicability.

From the clear facts of the case, the Reader truck was being unloaded at the time of this accident. Parker was working as the driver of the unloading fork-lift truck and was helping to unload the Reader truck. He was "using" the truck insured by Central Surety with the implied permission of the named insured and is, therefore, within the coverage of the "omnibus clause" of the policy.

The second question raised by the parties pertains to construction of an exclusion clause in the policy.

The policy provides as follows:

"EXCLUSIONS

"This policy does not apply:

"(b) under Coverage A, to bodily injury to . . . any employee of the Insured . . . while engaged in the employment of the Insured; or to any obligation for which the Insured or any Company as his insurer may be held liable under any workmen's compensation law."

As above quoted, the policy provides under insuring agreement III as definition of "Insured" that:

"The unqualified word 'Insured' includes the named insured and also includes any person while using an owned automobile . . . provided the actual use of the automobile is by the named insured or with his permission."

The question is whether the excluded employe of

"the insured" is an employe of the named insured, of another or additional insured under the omnibus clause immediately above quoted, or of either of them.

The only case in our jurisdiction which research has been able to reveal is that of Dickey v. General Accident Fire & Life Assurance Corp., 328 Pa. 541 (1938) where the policy provided:

" 'This policy does not cover (a) any liability of the Assured to any employee of the Assured . . . while engaged in any business or occupation of the Assured or. in the operation, maintenance or use of any automobile covered by this Policy, or to any person to whom the assured may be liable under any Workmen's Compensation Law'."

This is substantially the same language as contained in the policy now before us, however, using the language of the old-form policy prior to the 1947 change.

In that case the named insured's chauffeur was killed while riding in an automobile operated by the named insured. Decedent's estate was denied recovery against the insured under the policy provision on exclusion.

In the case here presented, the action is not against the named insured but against a third party, an additional insured, who was not an employer of the injured party. Under such a set of facts the New York case of Standard Surety & Casualty Co. v. Maryland Casualty Co., 100 N. Y. S. 2d 79 (1950) denied recovery on the theory that: " '. . . the term "assured" refers in every instance to the named assured, and, when it is qualified by the word "named," it applies solely to him' ", adopting the language of a Wisconsin case, Madison v. Steller, 226 Wis. 86, 89, 275 N. W. 703 (1937).

Thus, the New York decision holds that if the injured party is an employe of either the named insured or of the additional insured, he comes within the pur-

view of the exclusion clause. It interprets the policy from the point of view of the *risk* intended to be excluded holding that the risk excluded was injury to any employe of *any* user of the insured vehicle.

We note that the Supreme Court of Wisconsin has since held the exact opposite of its position in Madison v. Steller, supra, decided in 1937. In the case of Shanahan v. Midland Coach Lines decided in 1954, 268 Wis. 233, 67 N. W. 2d 297, the same court construed the following policy provision:

" 'This policy does not apply: . . .

" '(d) under coverages A and C, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment, other than domestic, of the insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law . . .' "

This is substantially the same language as that of the policy now before us.

The court there said:

"While this excludes coverage to the named insured, it cannot be relied upon to exclude additional insureds because the additional insureds in this case were not employers of the plaintiff."

The theory behind this construction seems to be that the exclusion applies only to the party against whom the claim is made and the test is applied: "Is the plaintiff an employe of the defendant?" It is immaterial whether plaintiff is an employe of any other insured, whether such other insured is the named insured or another additional insured under the "unqualified insured" definition. This view is also taken by the author of an article on "Liability Insurance— 'Loading and Unloading' " by Allan P. Gowan, appearing in the Insurance Law Journal of October 1951, page 752, wherein the author writes:

"In any event, the factory worker (and his employer) is covered as an 'additional insured' by the auto policy and, therefore, the auto insurer must pay its own insured employee's damages! Such claim is not excluded because the 'employee of *the insured*' exclusion applies only to the party against whom the claim is made or suit is brought and not to the policyholder or any other insured in this case."

This was an address delivered by the author before the Committee on Automobile Insurance Law of the Section of Insurance Law of the American Bar Association.

We also note that this writer observes in a footnote on page 753 that the Standard Surety & Casualty Co. v. Maryland Casualty Co. case, supra, construed the old form policy, which was amended in 1947, and that the present policy, (such as is now before us) would allow recovery.

It also appears to us that the 1954 Wisconsin case of Shanahan v. Midland, supra, construed the present standard policy; whereas the earlier 1937 case of Madison v. Steeler, which it in effect overruled, construed the old-form policy.

Apart from the above decisions from other jurisdictions, we believe a proper construction of the policy is to apply the exclusion only to the party against whom the claim is made under the policy.

The exclusion clause itself reads the policy does not apply to bodily injury to any employe of *the insured*, and in many provisions the policy differentiates between the unqualified word insured and the named insured. Compare the conditions of the policy. Such differentiation could also have been made in the exclusion clause but was not. That the contract must be read as a whole is an adage that is now commonplace but its truism is just as valid. It could have read that

it does not apply to bodily injury to "any employe of the named or other insured" but it did not.

Further we note the exclusion clause reads the coverage does not apply to "any employe of *the* insured." Who is *the* insured? The definition given in the policy of "insured" (not "the insured") includes the named insured and includes anyone using the car with the named insured's permission, but the exclusion clause directs attention to a specific insured, *the* insured. We believe this properly refers to *the* insured being sued, whether that be the named insured or one of several possible additional insureds. How easy it would have been, if the other construction were meant, for the word "any" to have been used instead of the particular "the" to preface "insured." It would then have been clear when it read the coverage does not apply to "any employe of any insured."

Thus we observe at least two possible easy and simple wordings of the clause, consistent with the general phraseologies of the policy, which would have placed the construction upon the exclusion clause for which garnishee contends.

We must construe it as it plainly reads. In doing so we fully realize such construction affords coverage to the additional insured which is not afforded to the named insured, but, as the Supreme Court of Wisconsin said in the Shanahan case, supra, "that is a matter of contract." The contract the parties enter into, unless contrary to law or public policy, is the contract to be enforced by the courts.

Wherefore, we enter the following

### Order

And now, August 17, 1956, the motion of defendant, United Steel Barrel Company, for judgment on the pleadings against garnishee, the Central Surety and Insurance Corporation, is granted and judgment accordingly is here entered in the amount of $7,700.