Ben KAUFMAN, trading and d/b/a The Prince Distributing Company and Continental Casualty Company, a Corporation, Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY, a Corporation, Defendant.

Civ. A. No. 13843.

United States District Court
W. D. Pennsylvania.
April 15, 1958.

---

924

Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., Robert E. Wayman, Hamilton A. Robinson and Joseph B. Bagley, Pittsburgh, Pa., for appellant Continental Casualty Co.

V. C. Short, Pittsburgh, Pa., for defendant.

McILVAINE, District Judge.

In keeping with the remand of the Court of Appeals, 245 F.2d 918, further proceedings were held and upon the rehearing we find the jurisdictional amount and find the facts as follows:

### Findings of Fact

1. Liberty Mutual Insurance Company issued its Schedule General Liability Policy No. LN8–100173–52–Pa. to Ben Kaufman, trading as Prince Distributing Company, effective August 14, 1952, and expiring August 14, 1955, a true and correct copy of which policy is attached to plaintiff's complaint in declaratory judgment, and marked Exhibit "A".

2. Continental Casualty Company issued its Comprehensive Automobile Liability Policy No. CCA5182890 to Ben Kaufman, trading as Prince Distributing Company, effective October 6, 1953, and expiring October 6, 1954, a true and correct copy of which policy is attached to plaintiff's amended complaint and marked Exhibit "B".

3. On the 17th day of December 1954, notice of suit in trespass was filed by one, Florence McClester, against Ben Kaufman, trading and doing business as the Prince Distributing Company at No. 2857 January Term 1955 in the Court of Common Pleas of Allegheny County, Pennsylvania, and a complaint in trespass was filed by the said Florence McClester averring that she sustained injury on the 9th day of June 1954, at approximately 11:15 p. m. while walking in a westerly direction on the southerly

sidewalk of Hoeveler Street near its intersection with Collins Avenue in the City of Pittsburgh, when a certain cellar door in the sidewalk allegedly was caused to be opened by an agent, servant or employee of defendant resulting in injury and damages to the plaintiff.

4. Thereafter, the defendant filed a complaint to join as additional defendants, Anthony Tumola and Alexander Colaizzi, individually and trading and doing business as Hoeveler Grill.

5. Ben Kaufman, trading as Prince Distributing Company, reported the alleged accident involving Mrs. Florence McClester to Continental Casualty Company on June 11, 1954, which company by its attorneys caused an appearance to be entered in behalf of the defendant, Ben Kaufman, subject however to a reservation of its rights under its policy.

6. Thereafter, on or about February 4, 1955, the said Ben Kaufman reported the aforesaid accident and claim to Liberty Mutual Insurance Company.

7. At the time of the alleged accident involving Florence McClester, one Francis Hoover was employed by Ben Kaufman as truck driver and Meyer Eismann as truck driver's helper and both were then and there engaged as the agent, servant, and employee of Ben Kaufman within the course and scope of their employment.

8. At the said time a truck owned by Ben Kaufman was parked on Hoeveler Street at or near the curbing in front of or adjacent to the sidewalk cellar entrance to the basement of Hoeveler Grill.

9. The said truck was one of the vehicles described in the declarations forming a part of the insurance policy issued to Ben Kaufman by Continental Casualty Company.

10. The sidewalk cellar entrance involved consisted of two doors, substantially level with the sidewalk, extending approximately four feet from the building line toward the curb, hinged on the outside and meeting at the center line of the opening when closed.

11. A barrel of beer was removed from the body of the said truck by Meyer Eismann, and placed upon the sidewalk at a point between the curb and the sidewalk entrance to Hoeveler Grill basement.

12. After depositing the barrel of beer on the sidewalk, Meyer Eismann entered the basement of Hoeveler Grill by another entrance, unlocked the said sidewalk cellar doors from the inside, and was in the act of opening or beginning to open the said doors when the accident to Florence McClester occurred.

13. Meyer Eismann, who is alleged to have negligently opened the said cellar doors, on prior occasions had followed the practice, and on this occasion intended to transport and deliver the said barrel of beer into the basement of Hoeveler Grill.

14. In addition to the above facts as stipulated between the parties, the Court also finds as a fact that at the time Meyer Eismann was in the act of opening or beginning to open the sidewalk cellar doors it was part of the act of unloading from the vehicle within the meaning of the comprehensive automobile liability policy issued by Continental Casualty Company to Ben Kaufman, trading as The Prince Distributing Company.

15. The defendant through its counsel has unqualifiedly admitted the plaintiff's general allegation that the matter in controversy exceeds the sum of $3,000 exclusive of interest and costs. (Transcript, Pre-Trial Conference, December 16, 1957, p. 4). The Continental Casualty Company in addition loaned Ben Kaufman $4,000 to settle the suit of Florence McClester against him in which case she had claims and damages as follows:

"Six months' lost wages | $980.00
Pittsburgh Hospital | 132.00
Dr. Swan | 150.00
Dr. John Young | 12.00
Watch repair | 8.50
Medicine · | 15.80"

In addition to these monetary expenses, she suffered a fracture of the lower end

of the radius of the right wrist, a fracture of the styloid process of the ulna of the right wrist, shock, and abrasions and contusions.

The settlement was fair and reasonable. The amount in controversy, therefore, exceeds the sum of $3,000 exclusive of interest and costs.

## Conclusions of Law

From the facts as found the Court makes the following Conclusions of Law:

1. The Court has jurisdiction over the parties in the subject matter of this action.

2. Inasmuch as all the facts have been stipulated and the parties have further stipulated that the sole responsibility should be that of the Continental Casualty Company if the act in question be considered loading or unloading from the vehicle, or the sole responsibility of the Liberty Mutual Insurance Company if the act in question does not constitute loading or unloading from the vehicle, the issue before the Court is a narrow one. In fact, the issue is not whether the act in question was part of loading or unloading, but it is simply whether the act in question was part of unloading as admittedly Meyer Eismann on this occasion was intending to transport and deliver the barrel of beer into the basement of the Hoeveler Grill and there is no evidence to indicate that there was to be any loading.

The industry of counsel and the Court's research have only been able to discover two Appellate Court cases dealing with this subject matter. This Court must follow the law of Pennsylvania as announced by its highest courts. We are in effect for the purpose of this case merely another court of the Commonwealth of Pennsylvania.

Both insurance carriers rely on the case of Wheeler v. London Guarantee & Accident Co., 1928, 292 Pa. 156, 140 A. 855. Continental also relies on the case of Ferry v. Protective Indemnity Co. of New York, 1944, 155 Pa.Super. 266, 38 A.2d 493, while the Liberty Mutual attempts to distinguish this latter case.

In the Wheeler case the insured truck transported two steel girders to a construction operation which were to be unloaded and delivered to the inside of the garage being erected. They were taken from the truck and placed on the ground. One of the girders had been moved inside the garage. The other was a heavier one and was more difficult to move requiring it to be jacked up and placed on planks and rollers in order to facilitate its removal from the sidewalk. While this work was in progress, the insured truck was standing across the street. A small boy trod upon the girder, it fell over upon him, and he was injured. The Court held that the automobile policy covered the accident because the accident arose out of the loading or unloading of a motor vehicle covered within the policy.

The Supreme Court of Pennsylvania pointed out that:

"Unquestionably at the time of the accident plaintiffs were actually engaged in the transportation and delivery of merchandise and materials incidental to their business. The process of the transportation was commenced by loading at the factory the two steel girders on the truck and trailer, both insured under the policy, and was to be completed by delivery of the girders upon a space within the garage building. We think no reference to authorities or decisions is required to support here the elemental principle that this particular instance of transportation and delivery could not be completed, in the absence of direct or implied orders or directions to the contrary, until the merchandise was unloaded and delivered from the truck and trailer inside the garage building where intended for use, and, indeed, this was the explicit direction given by the bricklayer foreman to plaintiffs' driver at the time he reported the arrival of the girders. He was told they 'had to go on the inside,' and it is not shown that the bricklayer was without authority to give such direction. It

certainly cannot then be sensibly contended that, when the girders were thrown from the motor vehicles which brought them, with one part lying inside the building and the other extending out over and obstructing the sidewalk, they were actually transported, unloaded and delivered at and upon the location designated and where intended to be used, and that the transportation and delivery was completed according to contract." Wheeler v. London Guarantee & Accident Co., 1928, 292 Pa. 156, 160, 140 A. 855, 856.

In the Ferry case it appeared that the insured truck was parked directly in front of the premises, and that a cellar door leading to the basement was located on the sidewalk. The driver of the insured truck entered the building by the front entrance and went into the basement where he picked up a can of ashes in the coal or furnace room and carried it to the steps leading to the sidewalk, placed it down, and then began to open the cellar door. In doing so a pedestrian tripped on the cellar door and was injured. The Superior Court there sustained the lower court which denied recovery. It is significant to note that this was a case in which a truck was to be loaded. The Court pointed out that to bring the accident involved in that case within the clause of the policy there had to be:

"* * * a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading; or it must have been an active factor in the operation." Ferry v. Protective Indemnity Co., 1944, 155 Pa.Super. 266, 269, 38 A.2d 493, 494.

The Superior Court indicated that the precise line at which the loading of a truck begins or unloading ends may in some cases be difficult of ascertainment. However, in the case before them involving the loading of a truck, they said that what was done "* * * was merely a convenience preparatory to loading, and

was not, under the facts, included in the process of loading the truck." Ferry v. Protective Indemnity Co., supra, 155 Pa.Super. at page 266, 38 A.2d at page 494.

Thus, in Pennsylvania the Superior Court has set forth what is the law in respect to loading, and the Supreme Court of Pennsylvania has set forth what is the law in respect to unloading. What we have here is an unloading situation, and the law of the Wheeler case must be applied.

Some help might be gained from other courts' interpretation of the Wheeler case. The District Court of Massachusetts in interpreting the Wheeler case and the similar case of the State ex rel. Butte Brewing Company v. District Court of Second Judicial District, 110 Mont. 250, 100 P.2d 932, pointed out that there had to be a causal relation between the injury and the process of unloading the motor vehicle. It said:

"Since the unloading was not completed until the goods reached their ultimate destination, where the injuries occurred while the goods were in transit between the motor vehicle and the final destination the courts held that such injuries were covered by the unloading clause, and were necessarily connected with the operation of unloading the insured motor vehicle." Maryland Casualty Co. v. United Corporation, D.C.Mass.1940, 35 F.Supp. 570, 572.

In a somewhat similar policy to the one involved in this case, the United States Court of Appeals for the Sixth Circuit commented on the Wheeler case and the unloading situation involved therein. The Court of Appeals there pointed out that in a policy like the one here that it was "* * * intended by the parties to cover liabilities arising in some instances where the truck was stationary." Maryland Casualty Co. v. Cassetty, 6 Cir., 1941, 119 F.2d 602, 604.

The annotators of the American Law Reports indicate that the Wheeler case is a clear "* * * expression of the rule

which considers 'unloading' and 'delivery' as synonymous terms * * *." 160 A.L.R. 1268.

In Pennsylvania the act of delivery of property is a part of the unloading process within the meaning of the unloading clause in an automobile liability policy such as the one involved here. In the Wheeler case, the Supreme Court of Pennsylvania held that unloading includes acts necessary to complete delivery. A similar conclusion was recently reached by the United States Court of Appeals for the Seventh Circuit in a recent decision in which they, in interpreting the law of Illinois, held that

" * * * the complete operation rule as pertains to unloading a vehicle covers the entire process from the time the goods are received until they have been finally delivered, regardless of whether the goods have come to rest at any time prior to final delivery." Liberty Mutual Insurance Co. v. Hartford Accident & Indemnity Co., 7 Cir., 1958, 251 F.2d 761, 764.

In the Ferry case, the Superior Court held that the loading clause does not extend so for as to include acts preparatory to loading a truck. While it might be urged that the decision in the Ferry case is inconsistent with that in the Wheeler case, we do not think that that is necessarily the case. What the Superior Court said was in effect that it could not find in the Ferry case a causal relationship between the preparation to load, opening the trap door, and the loading; hence, no recovery under the policy. However, the Supreme Court of Pennsylvania said that there can be a causal relationship between the unloading of a truck and delivery of the goods. Until the delivery is completed, the unloading is not complete. Thus, an injury occurring during the delivery process is one in which there is a causal connection with the unloading and there is liability under the policy.

Therefore, this Court having found that when Meyer Eismann, an employee of Ben Kaufman, trading and doing business as The Prince Distributing Company, was opening or beginning to open the sidewalk cellar doors, it was part of the act of unloading from the vehicle; and this Court further finding a causal relationship between the unloading and the delivery, finds as a matter of law that the obligation to indemnify Ben Kaufman, trading and doing business as The Prince Distributing Company, is that of the Continental Casualty Company, a corporation, the plaintiff herein.

### Order

And Now, to wit, this 15th day of April, 1958, it is Ordered and Directed that the obligation to indemnify Ben Kaufman, trading and doing business as The Prince Distributing Company, is that of the Continental Casualty Company, a corporation, plaintiff herein, and not that of the Liberty Mutual Insurance Company, a corporation, defendant.