**Ben KAUFMAN Trading and Doing Business as the Prince Distributing Company, and Continental Casualty Company, a Corporation, Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, a Corporation.**

No. 12638.

United States Court of Appeals Third Circuit.

Submitted Nov. 18, 1958.

Decided March 13, 1959.

864

Robert E. Wayman, W. Arch Irvin, Jr., Dickie, McCamey, Chilcote & Robinson, Pittsburgh, Pa., for appellant.

V. C. Short, Pittsburgh, Pa., for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

KALODNER, Circuit Judge.

Under Pennsylvania law, what is the meaning of the term "loading or unloading" of a vehicle as used in Comprehensive Automobile Liability and General Liability policies?

That is the issue presented by this appeal from the Order of the District Court for the Western District of Pennsylvania in a declaratory judgment action[1] seeking construction of the term "loading or unloading" as used in the policies above mentioned. The case is one in federal court by diversity of citizenship[2] and involves Pennsylvania law.

The agreed facts are detailed in the opinion of the Court below.[3] They may be summarized as follows:

In December, 1954, one Florence McClester sued Ben Kaufman, a beer distributor, in the Court of Common Pleas of Allegheny County, Pennsylvania, for injuries she suffered when Kaufman's employee negligently opened a cellar door set in a sidewalk in June, 1954. At the time of the accident Kaufman's beer truck was parked near the curb on Hoeveler Street, Pittsburgh, adjacent to the sidewalk cellar entrance to the basement of the Hoeveler Grill. A barrel of beer was removed from the truck by those in charge of it and placed upon the sidewalk between the curb and the sidewalk entrance to the Grill. The truck driver's helper then entered the basement of the Grill, by another entrance, unlocked the sidewalk cellar doors from the inside and was in the act of opening the doors when Mrs. McClester, a pedestrian, was struck by one of them and injured. The helper opened the cellar doors in order to deliver the barrel of beer inside the basement of the Grill.

While the McClester suit was pending in the State court, Kaufman, brought a declaratory judgment action in September, 1955 in the Western District of Pennsylvania against Liberty Mutual Insurance Company ("Liberty"), his general liability insurer, for construction and application to the accident involved of a clause excluding coverage for liability incurred while "loading or unloading" a vehicle. Later, Kaufman added as a party plaintiff Continental Casualty Company ("Continental"), an automobile liability insurer whose policy expressly covered "loading and unloading" a vehicle.

Agreeing that one of the two policies covered the accident to Mrs. McClester, Liberty and Continental stipulated Continental was to be held liable if the truck was being "unloaded" at the time of the accident; Liberty, if it was not.

1. The action was brought under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201.

2. The insured is a citizen of the State of Pennsylvania; his insurance companies, parties to this action, have their principal offices and are citizens of states other than Pennsylvania.

3. Kaufman v. Liberty Mutual Insurance Company, D.C.W.D.Pa.1958, 160 F.Supp. 923.

The case came on for hearing and on December 19, 1956, the District Court held that the truck was being "unloaded" at the time of the accident and accordingly it was Continental's obligation to indemnify Kaufman. Appeal was taken from this decision and we reversed on the ground that the record did not disclose whether the claim against Kaufman was in excess of $3,000, the required jurisdictional amount in a diversity case, and remanded with direction to the District Court to dismiss unless further proceedings in that Court established the $3,000 jurisdictional requirement.[4]

Subsequently hearing was held in the District Court on December 16, 1957, at which time it was established that in the interim Mrs. McClester's suit in the State court had been settled for $4,000 which had been loaned to Kaufman by Continental for the purpose. The District Court found the $4,000 settlement was "fair and reasonable" and accordingly the jurisdictional requirement was met in the declaratory judgment action. It further adhered to its original ruling that Mrs. McClester was injured while the truck was being "unloaded" and Continental is therefore liable.

In doing so the District Court relied on the decision of the Supreme Court of Pennsylvania in Wheeler v. London Guarantee & Accident Co., 1928, 292 Pa. 156, 140 A. 855, as declaring the Pennsylvania law with respect to what constitutes "unloading", and held it to be dispositive in the insant case. It limited application of a later decision by the Superior Court of Pennsylvania, an intermediate appellate court, in Ferry v. Protective Indemnity Company of New York, 1944, 155 Pa.Super. 266, 38 A.2d 493, 494, to a "loading" situation. Inferentially, the District Court indicated that the Pennsylvania courts have one rule with respect to "loading" and another with respect to "unloading".

Liberty agrees with the holding of the District Court that the Wheeler case supports its position and is dispositive here;

Continental relies on the Ferry case as requiring a ruling in its favor and, distinguishing Wheeler on its facts, says it too supports its position.

In view of the foregoing it is necessary for us to ascertain just what the Wheeler and Ferry cases held with respect to the interesting question as to what, under Pennsylvania law, constitutes "loading" or "unloading" a vehicle.

Our analysis of the cases mentioned compels the conclusion that, in the language of Ferry, Pennsylvania construes liability under the "loading and unloading" clause to result only when there is a "connection between the accident and the use of the vehicle insured", or, the vehicle was "an active factor in the operation."

In Ferry the driver of the insured truck, in order to remove ashes from the basement of a building, parked it at the curb directly in front of the premises. He then entered the building by the front entrance and went to the basement where he picked up a can of ashes and carried it to the steps of a basement exit via a cellar door opening into the sidewalk. As he raised the cellar door he caused a pedestrian to trip on it with resulting injury. The driver who was moving the ash can intended to place its contents in the parked truck.

The policy involved in Ferry provided coverage, as did the Continental policy in the instant case, (1) for bodily injury "caused by accident and arising out of the ownership, maintenance or use of the automobile", and (2) "use of the automobile * * * includes the loading and unloading thereof."

After stating the prevailing Pennsylvania rule that "A contract of insurance must have a reasonable interpretation, such as was probably in the contemplation of the parties when it was made * * *" the Superior Court said (155 Pa.Super. at pages 269–270, 38 A.2d at page 494):

"The 'loading and unloading' clause is only an extension of the

4. Kaufman v. Liberty Mutual Insurance Company, 3 Cir., 1957, 245 F.2d 918.

ownership, maintenance and use clause in the policy. To bring the accident within the 'loading and unloading' clause of the policy *there must be a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading; or it must have been an active factor in the operation.* See Wheeler v. London Guarantee & Accident Co., 292 Pa. 156, 140 A. 855.

"The precise line at which the *loading of a truck begins or unloading ends* may in some cases be difficult of ascertainment. But in the present case neither the ashes, nor the container in which they were carried, nor the insured truck was the cause of, or involved in, the accident. The instrumentality that caused the accident was the cellar door. This was merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck. See Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629.

"We are not unmindful that the decisions from other jurisdictions are not uniform in construing similar clauses in automobile liability policies. *But we find no convincing authority which would justify a construction which would include within the coverage of the policy an act independent of any use of the insured vehicle.* Our conclusion, under the facts in the instant case, is that the accident did not arise out of the loading of the truck as provided by the policy." (Emphasis supplied.)

It must be noted at this point that an application for allocatur from the Superior Court's decision was refused by the Pennsylvania Supreme Court, 155 Pa. Super. xxiii, 38 A.2d 493.

What was said and decided in Wheeler supports its citation in Ferry for the proposition that to bring a vehicle within the scope of the standard "loading and unloading" and "use" clauses of automobile liability policies it "must have

been directly connected with the work of loading [or unloading]; or it must have been an active factor in the operation."

Wheeler involved construction of clauses in an automobile liability policy similar to those contained in the instant case and in Ferry.

There, Wheeler and his associates ("Wheeler"), owned insured trucks and trailers which they used in their business. In accordance with a contract entered into by Wheeler with a firm of builders to *fabricate, deliver and erect* a structural steel garage building in Philadelphia, Pennsylvania, it transported to the building, then in course of construction, by means of a truck and trailer, two steel girders, weighing respectively 10,000 and 7,000 pounds. In the process of entering the building the wheels of the trailer sank so deeply into the soft earth within the structure that neither it nor the truck could proceed further, without removing the girders. They were then taken from the vehicles and placed on the ground, one end of each extending inside the building and the other end projecting about six feet across the sidewalk. Wheeler's driver, finding it impossible to proceed further with the girders, so informed Wheeler by telephone, and in response was sent a service car and appliances to assist him. By the means thus available and by using the insured truck and its motive power, the smaller girder was dragged completely into the building. The removal of the larger girder was more difficult, requiring it to be jacked up and planks and rollers placed under it to facilitate its removal from the sidewalk. While this work was in progress and the girder still extended over the sidewalk, three small boys approached, intending to step over the obstruction. As one of them trod upon the girder, it began to rock and as he stepped back to the sidewalk, the girder toppled over and fell on his foot, crushing it. In a subsequent suit damages of some $8,000 were recovered by the boy and his father from Wheeler who paid the amount of the verdict.

Wheeler's insurance company declined to participate in the defense of the suit. Later Wheeler sued his insurance company and won. On refusal of the trial court to set aside the verdict the insurance company appealed to the Pennsylvania Supreme Court. The appeal was premised on the insurer's contention that the accident to the injured boy was not covered by its policy, inasmuch as the girder by which the boy was injured had been thrown upon the sidewalk before the accident, and was not then upon the truck, which at the time stood across the street from the place of operation, and there was no longer connection of the girder with the truck.[5]

With respect to the insurer's contention the Court said (292 Pa. at pages 161, 162, 163, 140 A. at page 856):

" * * * If defendant company [insurer] is to escape liability under its policy, there must have arisen, during the transportation and delivery of the girder by which the boy was injured, a situation by which the service and use of the truck, as well as the truck itself, was *entirely and actually severed and disconnected from the active operations of dragging the girder inside the building to the designated location* * * * The latter's [truck driver's] testimony shows the truck was continuously and directly *connected with the work and operations of unloading and delivering the girders previous to, during and immediately following* the injury to the boy. The vehicle was *an indispensable agency* in the work, under the circumstances, and *as such, was at no time disconnected from it.* It is true, the truck, at the time of the accident to the boy, was stationed across the street opposite and near to the work of removing the girder from the sidewalk, but that it was at that time no longer an active factor in the operations is a claim wholly unjustified by the fact that three suc-

cessive times this truck, as an essential part of the operations, was stationed on the street, each time with its motor running; and as often, after brief time, *used as the main instrument to drag the girders into the building, and thus complete the unloading and delivery of the merchandise.* * * * It will be noted that there was no other motor power used or attempted to be used except that furnished by the truck in question. It was this truck which, by means of the block and tackle, pulled in the first girder into the garage, and it was the same truck which pulled the second girder. From the moment that operations began for the removal of the girders into the building, the truck was the chief and wholly essential factor in the work, and, during the entire period and at the moment of the accident, its motor was either furnishing the power with which to drag the girders or, during brief delays occasioned by preparatory work, was kept running and in close proximity for the same purpose. *To say therefore that the truck was no longer connected with the work of transportation and delivery because the girder was not on it and because it stood briefly a few feet away, is illogical and cannot be accepted.* * * * We reach the conclusion then that *whether the truck may be considered to have been unloaded or not, it was in active operation and use* at the time of the injury to the boy, that the accident occurred in the course of the transportation of plaintiffs' merchandise and that the loss to which the accident gave rise was one against which defendant insurance company was bound to indemnify plaintiffs." (Emphasis supplied.)

The foregoing establishes that the Court in Wheeler considered the critical factor in "loading" and "unloading" cases

---

5. The factual statement was taken almost verbatim from the Supreme Court's opinion.

to be the "connection", or lack of it, between the "use" of the vehicle and the accident. What was said and done in Ferry was in accord with Wheeler.

Since the two Pennsylvania appellate courts which have dealt with the question have clearly enunciated the rule that the "loading and unloading" and "use" clauses of an automobile liability policy do not operate to extend coverage in cases where there is no "connection" between the "use" of the insured vehicle and the accident, and we are bound to apply the Pennsylvania rule so declared under the doctrine of Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, we are of the opinion that the District Court erred in its holding that the coverage of Continental's policy extended to the accident in the instant case.

The record establishes that there was no "connection" between the "use" of Kaufman's truck and the accident and that is the dispositive factor here.

When Mrs. McClester was injured by the opening of the sidewalk cellar doors, the beer truck, in the language of Wheeler, was not "in active operation and use" nor was it "directly connected with" the happening of the accident; or as Ferry put it, there was absent "a connection between the accident and the use of the vehicle insured".

In view of Wheeler and Ferry we need not discuss the conflicting "coming to rest" and "complete operations" doctrines, urged respectively by Continental and Liberty. It may be noted, however, that neither of the cases mentioned these doctrines. Ferry, as earlier quoted, did cite Stammer v. Kitzmiller, 1937, 226 Wis. 348, 276 N.W. 629, following its statement that the opening of the offending cellar door, in order to haul the ash can to the truck for dumping, "was merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck." The Stammer case is recognized as the leading exponent of the "coming to rest" doctrine.[6]

Finally, since the Pennsylvania appellate courts in Wheeler and Ferry have expressly construed the "loading and unloading" and "use" clauses, we are not required to give consideration to two inferior court decisions dealing with these clauses.[7]

For the reasons stated the Order of the District Court will be reversed and the cause remanded with instructions to proceed in accordance with this Opinion.

6. The "coming to rest" and "complete operation" doctrines are treated at length in 160 A.L.R. 1259–1278, inclusive. Under the "coming to rest" doctrine the "loading and unloading" clause is limited to the actual removal or lifting of the cargo from the vehicle or its placement on it. Under the "complete operation" doctrine loading and unloading includes the complete operation of transporting the goods between the vehicle and the place from or to which they are being delivered.

7. Washington Assurance Corp. v. Maher, Pa.Com.Pl.1942, 31 Del.Co.R. 575; Clark v. United Steel Barrel Co., 1956, 7 Pa. Dist. & Co. R.2d 209. The result reached in Washington Assurance Corp. on its facts appears to be contrary to the ruling in Wheeler v. London Guarantee & Accident Co., 1928, 292 Pa. 156, 140 A. 855, which preceded it, and Ferry v. Protective Indemnity Co., 1944, 155 Pa. Super. 266, 38 A.2d 493, decided two years later. The same may be said with respect to the Clark case (not cited to this Court by the parties) although it could perhaps be distinguished on its facts.