## Marshall v. Safeguard Mutual Fire Insurance Company

*Barris Siegel,* for plaintiff.

*Harold F. Reed, Jr.* and *Reed, Ewing, Orr & Reed,* for defendant.

SOHN, J., May 7, 1963.—This is an action in assumpsit on an insurance policy issued by Safeguard Mutual Fire Insurance Company to Patricia W. Marshall. The policy provides coverage for collision or upset to the extent of actual cash value, less $100 deductible. The cost of repairs is admitted to be $508.17. Plaintiff claims $458.17, with interest from May 11, 1962. Obviously the proper claim is for $408.17. Interest is claimed from the date of loss. The policy provides that the amount of loss shall not be payable until 30 days after proof of loss is filed. In the complaint it is alleged that proof of loss was filed, but there is no allegation as to the date thereof. Under the pleadings, plaintiff is not entitled to recover interest.

The policy provides coverage under Coverage B—Collision or upset:

"Direct or accidental loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile."

Under Exclusions it is provided:

"This policy does not cover:

"(h) While the automobile is being operated by anyone other than the named insured or a member of his immediate household, unless expressly permitted by the Company and then only if this policy has been so endorsed; . . ."

No relevant endorsement was made.

In the complaint plaintiff avers the issuance of the policy and payment of the premium. It is averred that on May 11, 1962, on Seventh Avenue, Beaver Falls, the ". . . automobile was parked and unattended when said Pontiac automobile drifted backward and collided with . . ." other vehicles. The cost of repairs is alleged to be $508.17. It is alleged that the policy was in effect, that written notice of loss was given and that payment was refused. The foregoing allegations are specifically admitted in the answer.

Under new matter, defendant avers that at the time of the accident, the automobile had been delivered to Dorothy A. Boyd, who was neither the named insured, nor a member of insured's immediate household. It is averred that Dorothy A. Boyd borrowed the automobile and, in furtherance of her own business, drove it to Beaver Falls. It is averred that Dorothy A. Boyd parked the automobile on Seventh Avenue and while so parked, the automobile drifted backward and it was damaged in the manner set forth by plaintiff.

In plaintiff's reply to new matter, the averments referred to are admitted. Plaintiff denies that the automobile was under the care, custody and control of Dorothy A. Boyd after it had been parked. It was unattended and unoccupied for a period of five minutes prior to the collision.

Plaintiff and defendant moved for judgment on the pleadings.

Counsel for the parties state that they are unable to cite a Pennsylvania case in which the facts here presented were passed upon by a court. Our research has disclosed no such case.

Gruskin v. The Hartford Mutual Insurance Company, 29 D. & C. 2d 63, presented an issue similar to the issue in this case. In that case President Judge Graff stated the general principles applicable to our consideration of this case as follows:

"It is well established that an insurance policy will be construed most strongly against the insurer who has prepared it: MacDonald v. Metropolitan Life Insurance Co., 304 Pa. 213, 155 Atl. 491; West v. MacMillan (and Automobile Underwriters Insurance Co., Garnishees), 301 Pa. 344, 152 Atl. 104. If there is any doubt or ambiguity as to the meaning of the policy, the doubts or ambiguities will be resolved in favor of the insured: Beley v. Pennsylvania Mutual Life Insurance Co., 373 Pa. 231, 95 A. 2d 202; Howley v. Scranton Life Insurance Co., 357 Pa. 243, 53 A. 2d 613. It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain: Armon v. Aetna Casualty and Surety Company, 369 Pa. 465, 87 A. 2d 302, and the many cases cited therein; Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 385 Pa. 394.

"Simple words of common usage in a policy of insurance will be construed in their natural, plain and ordinary sense: Easton v. Washington County Insurance Company, 391 Pa. 29.

"Insurance policies must be sensibly construed: Albert v. Mutual Benefit Health and Accident Association, 350 Pa. 268; Pickett v. Pacific M. L. Ins. Co., 144 Pa. 79."

In deciding the case, President Judge Graff said:

"Plaintiffs contend that the words 'left unattended' contained in the exclusion of the policy, in paragraph 7 thereof, are ambiguous and susceptible of more than one conclusion. On the other hand, defendant contends that the language of paragraph 7 is susceptible of only one interpretation, and that is if property is stolen from a motor vehicle unattended upon the highway, that no liability can be imposed upon it. If the

word left had been eliminated from the policy, there can be no doubt but that the contention of defendant would be correct. It therefore becomes necessary to determine what the word left means in its ordinary understanding. Left is the past tense of the word leave. In Webster's New International Dictionary, 2d ed., leave is defined, inter alia, as follows:

"To allow or cause to remain; to cause to remain; to permit or let; to desert, abandon, or forsake.'

"These definitions all indicate a voluntary act. The admitted facts in this case disclose that the act of Mrs. Gruskin in going to the hospital was involuntary in character. The automobile was apparently demolished to the extent that it could not be used, and it was impossible to lock the car. If there is any doubt or ambiguity as to the meaning of the policy, doubts or ambiguities must be resolved in favor of the insured; and further, if the policy is reasonably susceptible of two interpretations, it must be construed in favor of the insured. It is significant that the insuror caused the word left to immediately precede the word unattended. If any and all loss by reason of theft from an unattended car along a public highway was intended under the terms of the policy, it would have been simple to have excluded the word left. This was not done.

"We therefore conclude that defendant company is liable under the admitted facts for the loss which has occurred."

In this case, it is necessary that we construe the words "is being operated". These words must be construed most strongly against the insurer; ambiguities must be resolved in favor of the insured, and if the words are reasonably susceptible of two interpretations the policy is to be construed in favor of the insured. The insurer selected the words to be used. We construe the words to mean actual physical operation

of the automobile. Had the words been "is operated", defendant's construction might be more reasonable. However, the insurer inserted the word "being." It must have some significance. Webster's New International Dictionary, second edition, lists "actually" as a synonym for "being." It further states: "Specifically, after is . . . followed by a past participle, being indicates the process toward the completed result expressed by the participle." This indicates a physical act of operation of the vehicle. At the time the damage occurred, the automobile was not being operated.

The Vehicle Code of April 29, 1959, P. L. 58, sec. 102, 75 PS §102, defines "operator" as:

"Every natural person who is in actual physical control of a motor vehicle or tractor upon a highway whether or not licensed as an operator under the laws of this Commonwealth."

In 7 Appleman Insurance Law and Practice, §139, 4314, under construction of the term operation, the following statement appears:

"The term 'operation' is included within the insuring expressions of many older forms of policies, and runs throughout the arterial structure of automobile insurance law. The better definition of the expression is that it involves personal physical management of the automobile by the person in question."

In 5A Am. Jur., p. 38, §36, "operate" is referred to as follows:

"The word 'operate' as used in the coverage or exception provision of automobile policies, is held to mean to regulate and control the management or operation of the car, that is, to have charge of it as the driver."

Counsel for defendant relies on decisions from other jurisdictions which indicate that operation of a vehicle includes "stopping on routine matters of daily busi-

ness and unoccupied." We conclude that these cases do not indicate the decision in this case. First and foremost, the issue in this case is a determination of the protection afforded under the terms of the policy. Second, the factual situation and coverage afforded is not similar in any case cited by defendant. Third, while not directly decided, Pennsylvania appears not to be in accord.

In Wheeler v. London Guarantee & Accident Co., 292 Pa. 156, the court sustained a judgment for plaintiffs because the truck was in active operation at the time of the injury. In Ferry v. Protective Indemnity Company of New York, 155 Pa. Superior Ct. 266, recovery was denied under an ownership, maintenance and use policy because the accident did not come within the provisions of the policy. Judge Rhodes (now President Judge) said:

"The 'loading and unloading' clause is only an extension of the ownership, maintenance and use clause in the policy. To bring the accident within the 'loading and unloading' clause of the policy there must be a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of loading; or it must have been an active factor in the operation. See Wheeler et al. v. London Guarantee & Accident Co., 292 Pa. 156, 140 A. 855.

"The precise line at which the loading of a truck begins or unloading ends may in some cases be difficult of ascertainment. But in the present case neither the ashes, nor the container in which they were carried, nor the insured truck was the cause of, or involved in, the accident. The instrumentality that caused the accident was the cellar door. This was merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck. See Stammer v. Kitzmiller et al., 226 Wis. 348, 276 N. W. 629.

"We are not unmindful that the decisions from other jurisdictions are not uniform in construing similar clauses in automobile liability policies. But we find no convincing authority which would justify a construction which would include within the coverage of the policy an act independent of any use of the insured vehicle. Our conclusion under the facts in the instant case, is that the accident did not arise out of the loading of the truck as provided by the policy."

In referring to these cases, Judge Kalodner, in Kaufman v. Liberty Mutual Insurance Company, 264 F. 2d 863, said:

"The foregoing establishes that the Court in Wheeler considered the critical factor in 'loading' and 'unloading' cases to be the 'connection', or lack of it, between the 'use' of the vehicle and the accident. What was said and done in Ferry was in accord with Wheeler.

"Since the two Pennsylvania appellate courts which have dealt with the question have clearly enunciated the rule that the 'loading and unloading' and 'use' clauses of an automobile liability policy do not operate to extend coverage in cases where there is no 'connection' between the 'use' of the insured vehicle and the accident, and we are bound to apply the Pennsylvania rule so declared under the doctrine of Erie Railroad Co. v. Tompkins, 1938, 304 U. S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, we are of the opinion that the District Court erred in its holding that the coverage of Continental's policy extended to the accident in the instant case.

"The record establishes that there was no 'connection' between the 'use' of Kaufman's truck and the accident and that is the dispositive factor here.

"When Mrs. McClester was injured by the opening of the sidewalk cellar doors, the beer truck, in the

language of Wheeler, was not 'in active operation and use' nor was it 'directly connected with' the happening of the accident; or as Ferry put it, there was absent 'a connection between the accident and the use of the vehicle insured'.

"In view of Wheeler and Ferry we need not discuss the conflicting 'coming to rest' and 'complete operations' doctrines, urged respectively by Continental and Liberty. It may be noted, however, that neither of the cases mentioned these doctrines. Ferry, as earlier quoted, did cite Stammer v. Kitzmiller, 1937, 226 Wis. 348, 276 N. W. 629, following its statement that the opening of the offending cellar door, in order to haul the ash can to the truck for dumping, 'was merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck.' The Stammer case is recognized as the leading exponent of the 'coming to rest' doctrine." While the Wheeler and Ferry cases relate to loading and unloading clauses in an insurance policy, they indicate that liability is dependent upon a connection or lack of it between the use of the vehicle and the accident. Under the pleadings in the case before us there is no such connection averred.

At the time of the collision, Dorothy A. Boyd was not in actual physical control of the automobile. The situation would have been the same if the operator of another vehicle had driven a vehicle into plaintiff's parked vehicle. By whom plaintiff's vehicle had been parked would not deprive plaintiff of her rights under the policy. Perhaps Dorothy A. Boyd did not properly set the emergency brake. Perhaps a child released the emergency brake. Perhaps there was a mechanical defect or failure. These are matters of conjecture. There is no pleading alleging such an occurrence. We must decide the case on the pleadings as filed by the parties and the provisions of the insurance policy.

Construing the policy most strongly against the insurer, and resolving any doubt or ambiguity in favor of the insured, we hold that the automobile was *not being operated* by Dorothy A. Boyd at the time the collision occurred. If the policy can be interpreted otherwise, we must accept the construction in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which the insured sought to obtain. We find no plain necessity requiring a different construction. The natural, plain and ordinary construction of "is being operated" refers to actual physical operation. We believe this to be the sensible construction of the policy.

We conclude that plaintiff's motion for judgment on the pleadings should be granted.

### Order

And now, to wit, May 7, 1963, for the reasons stated in the foregoing opinion, it is ordered, adjudged and decreed that plaintiff's motion for judgment on the pleadings be, and it is hereby granted, and judgment is hereby entered in favor of Patricia W. Marshall, plaintiff, and against Safeguard Mutual Fire Insurance Company, defendant, in the amount of $408.17.