277 F.2d 442
 FEDERAL INSURANCE COMPANY, a Corporation,
v.
MICHIGAN MUTUAL LIABILITY COMPANY, a Corporation, Appellant, and
J. Robert Bazley, Inc. and
Lamar P. Conrad and
S & E McCormick, Inc.
 No. 12950.
 No. 12951.
 United States Court of Appeals Third Circuit.
 Argued January 5, 1960.
 Decided March 25, 1960.
 
 Norman Paul Harvey, Philadelphia, Pa. (John J. McDevitt 3rd, Philadelphia, Pa., for Michigan Mutual Liability Co., on the brief), for appellant.
 Robert E. Jones, Philadelphia (Rawle & Henderson, George M. Brodhead, J. Welles Henderson, Jr., Philadelphia, Pa., on the brief), for Federal Ins. Co.
 Kimber E. Vought, Philadelphia, Pa. (Orr, Williams & Baxter, Philadelphia, Pa., on the brief), for Lamar P. Conrad.
 Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 These are appeals[1] from the district court's determination that an automobile insurance policy issued by the appellant, Michigan Mutual Liability Company (Michigan) constitutes the primary coverage in any actions for personal injuries or property damage arising out of an accident which occurred in October 1956, and that appellee's, Federal Insurance Company (Federal), policy constitutes solely excess insurance to the extent that Michigan's policy does not cover due to policy limits.
 
 
 2
 On October 2, 1956, S. & E. McCormick, Inc., (McCormick) transported a dragline shovel to a site in Pennsylvania. The body of the shovel was carried to the unloading site on an I-beam trailer and the counterweight was transported on a similar trailer. Both tractor-trailer combinations were owned and operated by McCormick and insured by Michigan. Because of the size and weight of the shovel and its counterweight, McCormick engaged J. Robert Bazley, Inc. (Bazley) to provide a mobile truck crane and operator to aid in the unloading. Bazley, not having one of its own cranes available, provided one which had been leased from a third party (not a party here). Bazley was the insured of Federal under a comprehensive liability policy.
 
 
 3
 In order to unload the body of the shovel, it was first necessary to remove the rear wheels of the I-beam trailer so that the shovel could be driven off the trailer bed under its own power. Upon completion of this operation it became necessary to replace the rear wheels. This normally was done by hand or, where circumstances made hand replacement difficult, by means of a winch attached to the trailer. Here, however, someone suggested that the truck crane be used to replace these wheels. McCormick's driver, Witczak, agreed. The left rear dual wheels were replaced without incident but in the course of replacing the right wheels the boom, or a guy wire, of the crane came in contact with or in close proximity to an overhead high tension wire transmitting an electric current downward and injuring the driver Witczak.
 
 
 4
 Witczak instituted actions, in the district court, against Bazley and Lamar P. Conrad (Conrad), Bazley's employee and the operator of the crane, for personal injuries. Federal brought this declaratory judgment suit against Michigan and included as parties defendant Bazley, Conrad and McCormick, and Conrad cross-claimed against Michigan, seeking the determination that Michigan was required to defend and pay any judgment in the causes against Bazley and Conrad. Federal and Conrad moved for summary judgment, their motions were granted and these appeals followed. The issues in both appeals are the same and will be treated together.
 
 
 5
 In its policy issued to McCormick, Michigan contracted to pay all sums for which the insured shall become legally obligated to pay because of bodily injury caused by accident and arising out of the ownership, maintenance or use of the automobile. The policy contained the usual "omnibus clause"[2] and a "loading and unloading clause".[3] There being no dispute as to the facts, Federal and Conrad moved for summary judgment which was granted. The district court concluded the injury arose out of the use of the I-beam trailer and, in passing, stated:
 
 
 6
 "Although it is not necessary to decide whether this use falls under the terms `the loading and unloading thereof' * * * the undersigned concludes that the Pennsylvania cases would consider this use part of `unloading'." 172 F.Supp. 858, at page 864.
 
 
 7
 Michigan contends, on this appeal, that the accident did not arise out of the use (including unloading) of the I-beam trailer and that even if it did, such use was not with the permission of McCormick.
 
 
 8
 Although the judgment of the district court can be sustained solely on the basis of "use clause" of the policy vehicle without going into the "unloading clause", the facts here indicate that one should not be considered without the other.
 
 
 9
 Since an unloading clause is involved there has been much discussion, in the briefs on appeal, concerning the "Coming to Rest" doctrine and the "Complete Operation" doctrine. Michigan asserts that Pennsylvania law applies and that Pennsylvania has adopted the "Coming to Rest" doctrine, citing Kaufman v. Liberty Mut. Ins. Co., 3 Cir., 1959, 264 F. 2d 863 and Ferry v. Protective Indemnity Co., 1944, 155 Pa.Super. 266, 38 A. 2d 493. Under this conception the process of unloading is complete when the cargo has been lifted or removed from the truck and set down, or the movement which took it from the truck ceases. The theory with supporting cases is set forth in 160 A.L.R. 1259, 1261, 1264-1267. Appellant argues that since the dragline shovel had been removed from the trailer and was standing idle 150 feet away at the time the accident happened, the unloading process was complete so that the unloading clause has no application.
 
 
 10
 Federal, on the other hand, urges that Pennsylvania has adopted the "Complete Operation" doctrine, citing Wheeler v. London Guarantee & Acc. Co., 1928, 292 Pa. 156, 140 A. 855. According to this the unloading process includes all intermediate steps from the time the goods are removed from the truck until they are turned over to the party for whom intended. See 160 A.L.R. 1259, 1261, 1267-1272. Since the crane operator, Federal argues, had still to remove the counterweight from the second trailer and assemble the shovel, the unloading process was still incomplete.
 
 
 11
 It should be pointed out that there is no clear enunciation of which rule Pennsylvania would apply. In Kaufman, supra, this court felt that the Wheeler and Ferry opinions, supra, were in harmony in that they required a connection between the use of the insured vehicle and the accident but explicitly stated: "In view of Wheeler and Ferry we need not discuss the conflicting `coming to rest' and `complete operations' doctrines * * *", 264 F.2d at page 868, and noted further that neither case mentioned the doctrines. Once again it is unnecessary to become involved in the application of the conflicting theories as this also is not a proper case for dealing with them. One identical fact is to be found in the decisions in which either of the conflicting theories has been applied; either the cargo being unloaded or an operation ancillary to unloading but entirely disconnected from the insured vehicle has been the cause of the injury complained of. But in this matter the injury arose in the course of an operation concerning the insured vehicle, not the cargo, and yet was necessitated solely by virtue of the unloading process. It is immaterial whether the cargo came to rest or did not come to rest — it was not a factor in the accident. The rear wheels had to be removed in order to drive the shovel from the trailer. And the wheels had to be replaced. By analogy, the body of a dump truck must be raised in order to cause the dirt or sand to slide to the ground. It would be rather far-fetched to aver that because the cargo is resting on the ground that the lowering of the truck is not part of the dumping operation. So too in this instance, replacing the rear wheels was part of the unloading operation.
 
 
 12
 Though the I-beam trailer might not be the proximate cause of the injury, for liability purposes there is a sufficient connection between its use and the accident, i. e. the unloading, to satisfy the requirement set forth in Kaufman. Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn.1954, 122 F.Supp. 197, 200. While there is no discussion on this point, Indemnity Ins. Co. of North America v. Old Dominion Hoisting Serv., 1958, 102 U.S.App.D.C. 141, 251 F.2d 382, held the unloading clause applied where death resulted from a crane coming in contact with high tension wires in the course of transporting a girder from the insured truck to its resting place. See 27 Ins. Counsel Journal 150 (Jan. 1960); 26 Ins. Counsel Journal 411, 413 (July 1959); 26 Ins. Counsel Journal 93 (Jan. 1959).
 
 
 13
 Appellant's contention that replacing rear wheels was maintenance is without merit. Removing and replacing the rear wheels was to facilitate unloading, not for the purpose of preserving an existing state or condition, embracing acts of repair and other acts to prevent a decline, lapse or cessation from that state or condition. Morris v. American Liab. & Sur. Co., 1936, 322 Pa. 91, 94, 185 A. 201.
 
 
 14
 Michigan's argument that Bazley was not using the I-beam trailer with the permission of McCormick is contrary to the facts. McCormick permitted the use of the truck for delivering and unloading the dragline shovel. Bazley in replacing the rear wheels was completing the unloading operation. This was the very use intended by McCormick so that it is immaterial that Bazley, personally, had no express permission from the named insured, McCormick, to so use the trailer. Maryland Cas. Co. v. Marshbank, 3 Cir., 1955, 226 F.2d 637, 640; Conrad v. Duffin, 1945, 158 Pa.Super. 305, 309, 44 A.2d 770. There was sufficient evidence to the effect that it was usual to employ a crane to replace the rear wheels whenever one was made available for that purpose. It is clear that Bazley's use of the I-beam trailer was not a deviation from the use for which permission had been given by the named insured, so that the principle expressed in Aetna Cas. & Sur. Co. v. De Maison, 3 Cir., 1954, 213 F.2d 826 is not applicable.
 
 
 15
 Finally, Michigan claims that should a jury in the pending negligence actions base a finding on the allegations of the complaint of Witczak against Bazley, none of which make a charge related to the use of the I-beam trailer, the resulting liability of Bazley would not be covered by Michigan's policy. Those allegations, alleging negligence on the part of Bazley and Conrad are the very reason those parties seek the protection of Michigan, the primary insurance carrier. The allegations of the complaint propose to affix responsibility for the injuries — not determine the coverage of an insurance policy. This contention is not the same as where the insurer urges it is not compelled to defend an action since the complaint does not disclose if the injury was caused by an operation within the policy coverage, which question is in a state of indecision in Pennsylvania. See, Clauss v. American Auto. & Ins. Co., D.C.E.D.Pa.1959, 175 F.Supp. 641, 644; Thill Candy Co. v. Farm Bureau Mut. Auto. Ins. Co., D.C.E.D.Pa.1959, 171 F. Supp. 237, 242; Cadwallader v. New Amsterdam Cas. Co., 1959, 396 Pa. 582, 152 A.2d 484; Wilson v. Maryland Cas. Co., 1954, 377 Pa. 588, 105 A.2d 304, 50 A.L. R.2d 449; University Club v. American Mut. Liab. Ins. Co., 1937, 124 Pa.Super. 480, 189 A. 534; West Philadelphia Stock Yard Co. v. Maryland Cas. Co., 1930, 100 Pa.Super. 459; 50 A.L.R.2d 458, 500-506. Appellant confuses the basis for finding liability for the purpose of recovery with the basis for finding the extent of coverage of the insurance contract.
 
 
 16
 The orders of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 Federal jurisdiction is obtained by reason of the diversity of citizenship of the parties and we, therefore, sit as a Pennsylvania court so far as the substantive law of the case is concerned
 
 
 [2]
 "III Definition of Insured
 "* * * the unqualified word `insured' includes the named insured * * and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured * * or with the permission of (the named insured) * * *."
 
 
 [3]
 "Use of the automobile for the purpose stated includes the loading and unloading thereof."