**ALLSTATE INSURANCE COMPANY**

v.

**SENTRY INSURANCE, a Mutual Company.**

Civ. A. No. 82–2465.

United States District Court, E.D. Pennsylvania.

May 9, 1983.

Susan Warnock Thomas, LaBrum & Doak, Philadelphia, Pa., for plaintiff.

Ronald H. Sherr, Norristown, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

The issue in this diversity action is which of two insurance companies is required to defend and indemnify the insureds, William and Ellen Assman, in a separate negligence suit brought against them by an injured third party. The Assmans have liability insurance with the present plaintiff, Allstate Insurance Company ("Allstate"), under an automobile policy and with the defendant, Sentry Insurance, A Mutual Company ("Sentry"), under a homeowner policy. Allstate seeks a declaratory judgment[1] construing the provisions of the respective policies and determining the rights and responsibilities of the parties under the circumstances of the accident.[2] The matter is before me on cross-motions for summary judgment. Because I have determined that there is no genuine issue as to any material fact and that Allstate is entitled to judgment in its favor as a matter of law, I will grant plaintiff's motion and deny defendant's motion.

The underlying negligence action[3] arose from injuries suffered by Francis Palmer on June 27, 1981, when a desk owned by the Assmans allegedly fell off a dolly and knocked him to the pavement. The desk was being transported from the eighth floor office where Ellen Assman worked to the Assmans' pickup truck parked on the street below.

At the time of the accident Ellen Assman worked as a secretary for the International Association of Machinists at the union's district office on Arch Street in Philadelphia. When the union decided to move its office to New Haven, Connecticut, it offered to sell some of the office furniture to its employees. Mrs. Assman did not intend to transfer to New Haven and informed her boss that she would buy her desk, chair and typewriter. The desk was made of metal and was L-shaped, the smaller section unable to stand on its own if detached from the larger section.

On Saturday, June 27, 1981, Mr. and Mrs. Assman drove their pickup truck to the office to remove the purchased furniture. So as not to block the side street (Juniper Street) from which they would be putting the furniture into the truck, Mr. Assman parked the vehicle in a lot behind the building while he and his wife went up to the eighth floor to get the desk, chair and typewriter. On the eighth floor the elevator operator provided the Assmans with a four-wheeled dolly to carry the desk. Mr. Assman separated the two parts of the desk, placed the larger section on the dolly, and put the smaller section inside the legs of the larger section. The Assmans and the elevator operator then took the furniture down to the first floor on the elevator. Mr. and Mrs. Assman pushed the dolly out onto the Arch Street sidewalk. When they reached the Juniper Street building line, Mr. Assman left to get the pickup truck. Mrs. Assman waited with the dolly.

Mr. Assman backed the truck down Juniper Street to a point near the corner of Arch and Juniper. He parked the truck and lowered the tailgate about eight to ten feet from the dolly. Mr. Assman walked back to where his wife was holding the desk on the dolly. He took the smaller piece of the desk and began to carry it toward the truck. When he had gone a little more than halfway to the truck, his wife yelled that the desk was falling. At the same time Francis Palmer was walking past the dolly on the sidewalk. The larger part of the desk fell off the dolly and allegedly knocked Palmer to the ground. Palmer suffered a back injury that required hospitalization and surgery. There is no dispute

---

1. This action was brought under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201.

2. The parties agree that I should look to Pennsylvania law in construing the provisions of the insurance policies.

3. *Palmer v. Assman,* Civil Action No. 82–1997 (E.D.Pa. filed May 5, 1982).

that when the accident occurred: (1) none of the furniture had been placed in the truck and (2) the larger part of the desk was in a stationary position on the dolly at least eight feet from the truck.

The pickup truck was insured by Allstate's automobile liability policy. The policy covers "claims for accidents arising out of the ownership, maintenance or use, loading or unloading of the auto. . . ." Sentry's homeowner policy also provides liability insurance but contains an express exclusion for third-party bodily injury and property damage "arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle. . . ." Sentry bases its cross-motion for summary judgment on this exclusion.[4] It is clear that one of these two policies covers the accident. The question is whether the accident arose out of the loading of the Assmans' truck.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Although any doubts as to the existence of genuine issues of fact must be resolved against the moving party and any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party, "summary judgment is a useful procedure when there is no dispute about the critical facts and it serves to

eliminate the expense and delay of unnecessary trials." *Peterson v. Lehigh Valley District Council, United Brotherhood of Carpenters and Joiners,* 676 F.2d 81, 84 (3d Cir.1982).

In this case the parties do not disagree on what happened. Nor does anyone contend that the "loading and unloading" clause is ambiguous. It is, of course, well-settled that if the language of an insurance policy is clear and unambiguous, courts are to give effect to its plain and ordinary meaning. *St. Paul Fire & Marine Insurance Co. v. United States Fire Insurance Co.,* 655 F.2d 521, 524 (3d Cir.1981); *Pennsylvania Manufacturers' Association Insurance Co. v. Aetna Casualty & Surety Co.,* 426 Pa. 453, 457, 233 A.2d 548, 551 (1967). As the Pennsylvania Superior Court said in construing a similar "loading and unloading" clause:

> There is nothing to indicate that the terms "loading" and "unloading" have acquired a different and technical meaning in commercial usage from the popular meaning usually attributed to them, nor does it appear from the policy that it was the intention of the parties to use such terms in a technical or peculiar sense. Consequently, the only question for determination is whether the situation here involved is one which reasonably comes within the terms of the policy. . . .

*Ferry v. Protective Indemnity Company of New York,* 155 Pa.Super. 266, 269, 38 A.2d 493, 494 (1944), *allocatur denied,* 155 Pa.Su-

---

**4.** Because I find that Allstate is entitled to summary judgment on the ground that the accident does not come within the "loading and unloading" clause, it is unnecessary for me to decide whether *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974) and its progeny preclude Sentry from relying on its express exclusion of "loading or unloading" as a basis for denying coverage. *Hionis* held that because insurance contracts are typically contracts of adhesion, an insurer may not rely on an exclusion or limitation (even if written in unambiguous language) to avoid coverage unless it shows that the insured was aware of the exclusion at the time he entered into the insurance contract and that the effect of the exclusion was explained to him. For a recent discussion of the *Hionis* rule, *see Mattes v. Na-*

*tional Fidelity Life Insurance Co.,* 506 F.Supp. 955 (M.D.Pa.1980), *aff'd without opinion,* 659 F.2d 1069 (3d Cir.1981), *cert. denied,* 454 U.S. 966, 102 S.Ct. 509, 70 L.Ed.2d 383 (1981). For purposes of ruling on these cross-motions for summary judgment, I may assume without deciding that the Assmans were aware of and understood the exclusion when they entered into the insurance contract with Sentry. Under the circumstances of this case it is clear that permitting Sentry to assert the exclusion cannot result in a complete absence of coverage. Since the policies are mutually exclusive, one of them covers the accident. I note that, while not dispositive of the *Hionis* question, the Assmans seem to have been aware of this situation since they requested both Allstate and Sentry to defend them.

per. xxiii, 38 A.2d 493 (1944). Since the sole question is the legal significance of undisputed facts, the matter is appropriate for disposition by summary judgment.

The most recent statement of Pennsylvania law on "loading and unloading" was given by the Superior Court in *Presbyterian-University of Pennsylvania Medical Center v. Keystone Insurance Co.,* 251 Pa.Super. 71, 380 A.2d 381 (1977). There a hospital orderly was in the process of helping a patient get out of his parked car and into a nearby wheelchair. After the orderly had assisted the patient from the car but before he had placed him in the wheelchair, he allegedly dropped the patient resulting in serious injuries. The medical center sought a declaratory judgment that the automobile's liability insurer should defend it in the patient's suit against the medical center because the orderly was "unloading" the patient from the car when the accident occurred. The Superior Court, quoting *Ferry,* 155 Pa.Super. at 269, 38 A.2d at 494, affirmed the denial of the petition for declaratory judgment:

> The law is well-settled in Pennsylvania that
>
>> The "loading and unloading" clause is only an extension of the ownership, maintenance and use clause in the policy. To bring the accident within the "loading and unloading" clause of the policy there must be a connection between the accident and the use of the vehicle insured. The vehicle must have been directly connected with the work of [un]loading; or it must have been an active factor in the operation.

*Presbyterian,* 380 A.2d at 382–383. (citations omitted) Finding no connection between the patient's fall and the use of the insured automobile parked passively at the curb, the court held that the accident did not come within the "loading and unload-

ing" clause of the automobile insurance policy.

In deciding *Presbyterian,* the Superior Court relied on two Pennsylvania state court precedents and a Third Circuit case applying Pennsylvania law. The earliest "loading and unloading" case was *Wheeler v. London Guarantee & Accident Co.,* 292 Pa. 156, 140 A. 855 (1928). Wheeler's truck was being used to deliver two heavy steel girders to a construction site. When the wheels of the truck began to sink in the soft earth on the site, the driver removed the girders from the truck, placed them on the sidewalk, and used the truck to drag them into the building under construction. In the process one of the girders fell on the foot of a small boy who was attempting to get by the obstruction on the sidewalk. The Pennsylvania Supreme Court held that the accident was covered by the policy insuring Wheeler's truck. The court reasoned:

> From the moment that operations began for the removal of the girders into the building, the truck was the chief and wholly essential factor in the work, and, during the entire period and at the moment of the accident, its motor was either furnishing the power with which to drag the girders or, during brief delays occasioned by preparatory work, was kept running and in close proximity for the same purpose. To say therefore that the truck was no longer connected with the work of transportation and delivery because the girder was not on it and because it stood briefly a few feet away, is illogical and cannot be accepted.[5]

*Id.,* 292 Pa. at 162, 140 A. 855. The critical factor in *Wheeler* was the active role played by the truck in the operation. There was thus a connection between the use of the truck and the accident.[6]

---

**5.** At the precise moment of the accident in *Wheeler* the truck was stationed, with its motor running, across the street while planks and rollers were being placed under the second girder to facilitate its removal from the sidewalk. The position taken by the dissenting justices, that this temporary lapse in direct use of the truck took the accident outside the poli-

cy, was expressly rejected by the majority in favor of the view quoted above.

**6.** In construing the pertinent "loading and unloading" clause, the *Wheeler* court looked to the contract between Wheeler and the builder to see if Wheeler could have considered the girders "unloaded" when they were taken from

*Ferry v. Protective Indemnity Co., supra,* involved an injury to a pedestrian as the driver of the insured truck was carrying a can of ashes to be placed on the truck. The truck was parked at the curb. The driver entered the building by the front entrance, went to the basement to get the can of ashes, and carried the can up the steps of a basement exit that opened onto the sidewalk a few feet from where he had parked the truck. He hit the pedestrian with the cellar door as he came out of the basement. The Superior Court held that this accident did not come within the "loading and unloading" clause of the policy insuring the truck. Using the language quoted in the *Presbyterian* case, the court found no connection between the accident and the use of the insured vehicle.

In *Kaufman v. Liberty Mutual Insurance Co.,* 264 F.2d 863 (3d Cir.1959), the Third Circuit was presented with a case that was factually similar to *Ferry.* Like the present action, *Kaufman* was a suit for a declaratory judgment to determine which of two insurance policies (one expressly including "loading and unloading" and the other expressly excluding it) covered an accident. The driver of the insured truck parked the vehicle at the curb in front of the Hoeveler Grill. He removed a barrel of beer from the truck and placed it on the pavement next to the sidewalk entrance to the basement of the Grill. The driver's helper went into the Grill and down to the basement to open the door from the inside. As he did so he struck a pedestrian with the door.

Relying on *Wheeler* the district court found that the accident occurred during the unloading process. The court saw *Wheeler* as providing the law on unloading and *Ferry* as limited to loading situations. In an opinion that discussed both cases at length, the Third Circuit reversed. That court held that Pennsylvania had the same standard for both loading and unloading:

> Our analysis of the cases mentioned compels the conclusion that, in the language of Ferry, Pennsylvania construes liability under the "loading and unloading" clause to result *only* when there is a "connection between the accident and the use of the vehicle insured", or, the vehicle was "an active factor in the operation."

*Id.,* 264 F.2d at 865. (emphasis added)

In support of its contention that the "loading and unloading" provision covers the accident in the present case, Sentry makes three arguments. First, it asserts that *Wheeler* "essentially stands for the proposition that the unloading and loading clause covers the entire process involved in the movement of goods from the moment they are given into the insured's possession until the article reaches the final point to which it is being delivered." Sentry's Memorandum of Law, filed 11/16/82, at 4. Although Sentry acknowledges that Pennsylvania has not joined those jurisdictions that have adopted this "complete operation" doctrine and rejected its rival, the "coming to rest" doctrine, Sentry seems to be saying

---

the truck and placed on the sidewalk. Since the contract for the delivery of the girders specified that the girders were to be placed inside the building, the court concluded that it:

> certainly cannot then be sensibly contended that, when the girders were thrown from the motor vehicles which brought them, with one part lying inside the building and the other extending out over and obstructing the sidewalk, they were actually transported, unloaded and delivered at and upon the location designated and where intended to be used, and that the transportation and delivery was completed according to contract. Manifestly it was not considered so by plaintiffs' truck driver nor by plaintiff company itself, as shown by the telephone call for help by the

driver and the prompt arrival of the superintendent from the factory with a service car and block and tackle to complete the delivery.

*Wheeler,* 292 Pa. at 160, 140 A. 855. Sentry's argument that *Wheeler* thus requires a find that a "loading and unloading" clause covers the entire process or operation of moving the goods will be discussed below. At this point it is sufficient to note that *Wheeler* involved a commercial transaction (the transportation and delivery of steel girders) the terms of which were specified in a contract. There is no such contract in the present case to suggest that a similar gloss be put on the "loading and unloading" clause.

that *Wheeler* requires that such a choice be made.[7]

In both *Kaufman* and a later case, *Federal Insurance Co. v. Michigan Mutual Liability Co.,* 277 F.2d 442 (3d Cir.1960), the Third Circuit pointed out that Pennsylvania courts have been able to decide the cases before them without choosing between the two doctrines. Moreover, I note that neither *Wheeler, Ferry,* nor *Presbyterian,* the latter decided in 1977, even mention the doctrines. Accordingly, I do not deem it necessary to predict which of the conflicting theories the Pennsylvania Supreme Court would apply. Like the *Presbyterian* case, this case can be decided without making the choice.

The Third Circuit's decision in *Federal Insurance* helps to illustrate why *Wheeler* cannot be given the interpretation offered by Sentry. Both *Wheeler* and *Federal Insurance* talk about the "unloading process" and in each case the court found that the process had not been completed when the accident occurred, but neither case turned on that finding.

*Federal Insurance* involved an insured tractor-trailer that was delivering a dragline shovel to a construction site. In order to drive the shovel off the trailer, it was necessary to remove the trailer's rear wheels. The accident occurred while the wheels were being put back on the trailer. By that time the shovel had been driven off the trailer and parked 150 feet away. The Third Circuit affirmed the district court's finding that the replacement of the rear wheels was part of the unloading operation. Furthermore, the court stated that it was "immaterial whether the cargo [the drag-

line shovel] came to rest or did not come to rest" since the cargo "was not a factor in the accident." *Id.,* 277 F.2d at 445. Each of these rulings, however, was only prefatory to the court's ultimate holding, i.e. that because the replacement of the trailer's rear wheels was necessitated by the operation of unloading the cargo, there was a sufficient connection between the use of the trailer and the accident.[8]

In *Wheeler,* by way of comparison, the cargo (the girder) *was* a factor in the accident.[9] In addition, the court felt that, under the contract between Wheeler and the builder, the unloading process had not been completed. *See* note 6, *supra.* However, the court stated that the basis of its decision lay in the active involvement of the truck in the unloading operation:

> We reach the conclusion then that whether the truck may be considered to have been unloaded or not, it was in active operation and use at the time of the injury to the boy, that the accident occurred in the course of the transportation of plaintiffs' merchandise and that the loss to which the accident gave rise was one against which defendant insurance company was bound to indemnify plaintiffs.

*Wheeler,* 292 Pa. at 163, 140 A. 855.

I conclude that although Pennsylvania courts seem to accept the idea that the loading or unloading operation may extend beyond the mere placement of the cargo on the vehicle or the removal of the cargo from the vehicle, they will not permit a "loading and unloading" clause to cover every accident that takes place during the course of the operation. I cannot, there-

---

7. The "coming to rest" and "complete operation" doctrines are discussed at length in 6 A.L.R. 4th 686–757 (1981). Under the "coming to rest" doctrine the "loading and unloading" clause is limited to the actual removal or lifting of the cargo from the vehicle or its placement on it. Under the "complete operation" doctrine loading and unloading includes the complete operation of transporting the goods between the vehicle and the place from or to which they are being delivered.

8. The present case would be analogous to *Federal Insurance* if Mr. Assman had injured a pedestrian while lowering the tailgate of the pickup truck.

9. Although in *Wheeler* the cargo was involved in the accident and in *Federal Insurance* the cargo was not involved, both courts found coverage under the "loading and unloading" clause. The importance of whether or not the cargo was involved in the accident will be discussed below in connection with Sentry's third argument.

fore, accept Sentry's argument that the scope of the clause is coextensive with the scope of the operation. As stated in *Ferry* and repeated in *Presbyterian,* the "loading and unloading" clause "is only an extension of the ownership, maintenance and use clause in the policy." *Ferry,* 155 Pa.Super. at 269, 38 A.2d at 494. Unless the vehicle is an active factor in the operation or there is a connection between the use of the vehicle and the accident, the "loading and unloading" clause will not, under Pennsylvania law, cover the accident.

With the foregoing discussion in mind, it is easy to dispose of Sentry's second and third arguments. Sentry seeks to distinguish the result reached in *Ferry* and *Kaufman* on the ground that, unlike the present case, in both of those cases an independent instrumentality (the cellar door) "actually caused the injury." Sentry's Memorandum of Law, filed 11/16/82, at 5. The simple answer to this argument is that none of the cases turn on what actually or proximately caused the accident. In *Federal Insurance* a portion of the crane that was being used to replace the trailer's rear wheels came in contact or in close proximity with an overhead high tension wire. The Third Circuit did not regard the involvement of this independent instrumentality as breaking the connection between the use of the trailer and the accident:

> Though the I-beam trailer might not be the proximate cause of the injury, for liability purposes there is a sufficient connection between its use and the accident, i.e. the unloading, to satisfy the requirement set forth in Kaufman.

277 F.2d at 445. In a case involving the scope of the principal clause ("arising out of the ownership, maintenance or use") the Pennsylvania Supreme Court held that the required connection between the accident and the vehicle need not rise to the level of proximate causation; "but for" causation is enough to satisfy the policy provision.[10] *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.,* 403 Pa. 603, 170 A.2d 571 (1961); *see also Schweitzer v. Aetna Life and Casualty Co.,* —— Pa.Super. ——, 452 A.2d 735 (1982). The findings of non-coverage in *Ferry* and *Kaufman* were not based on a connection that was broken by an independent instrumentality but on the lack of any connection between the accident and the use of the insured vehicle.[11]

Finally, Sentry relies on *Ferry* for the proposition that "there is coverage under a loading or unloading clause if the article sought to be loaded is the cause of, or involved in, the accident." Sentry's Memorandum of Law, filed 11/16/82, at 7. Essentially, Sentry is reading *Ferry* to say that it is sufficient if there is a connection between the article to be loaded or unloaded and the accident. I disagree. Sentry cites no case in which the court, applying Pennsylvania law, found coverage under a "loading and unloading" clause when there was a connection between the cargo and the accident but no connection between the insured vehicle and the accident. In *Wheeler* it was not the connection between the girder and the accident that mattered. As explained above, the decisive factor in *Ferry* was the absence of any connection between

**10.** By emphasizing the actual cause of the injury in *Ferry* and *Kaufman,* Sentry not only misconstrues the holdings of these two cases but puts itself in the position of arguing a degree of causation that is stricter than Pennsylvania law requires and less supportive than the "but for" standard of expanding the "loading and unloading" clause to reach the present accident.

**11.** The causation language in *Ferry* seems to have been intended to support the court's finding that, under the facts of that case, the loading process had not yet begun when the accident occurred. After reciting the standard that

was later quoted in the *Presbyterian* case, the Superior Court continued:

> The precise line at which the loading of a truck begins or unloading ends may in some cases be difficult of ascertainment. But in the present case neither the ashes, nor the container in which they were carried, nor the insured truck was the cause of, or involved in, the accident. The instrumentality that caused the accident was the cellar door. This was merely a convenience preparatory to loading, and was not, under the facts, included in the process of loading the truck.

*Ferry,* 155 Pa.Super. at 269–70, 38 A.2d at 494.

**636**

the use of the *vehicle* and the accident.[12] The Superior Court did point out that neither the ashes nor the container was involved in the accident, *see* note 11, *supra,* but in no way suggested that the result would have been different if the driver had opened the cellar door and hit the pedestrian with the can of ashes as he came out of the basement.

■ At the time of the accident in the present case, the Assman's pickup truck was parked at the curb, and the larger part of the desk was being held on a stationary dolly some eight to ten feet away. Mr. Assman was carrying the smaller section toward the truck, but the accident occurred before he ever got there. I will assume that the loading operation had begun. However, as explained above, this fact alone is not enough to bring the accident within the "loading and unloading" clause. Sitting passively at the curb, the truck was neither an active factor in the loading operation nor in any way connected with the accident. Accordingly, Allstate is entitled to summary judgment in its favor declaring that Sentry is required to defend and indemnify the Assmans in the negligence action brought against them by Francis Palmer. Sentry's motion for summary judgment will be denied.

**12.** After acknowledging that there were inconsistent decisions in other jurisdictions, the *Ferry* court concluded:

> But we find no convincing authority which would justify a construction which would include within the coverage of the policy an act *independent of any use of the insured vehicle.* Our conclusion, under the facts in the instant case, is that the accident did not arise out of the loading of the truck as provided by the policy.

155 Pa.Super. at 270, 38 A.2d at 494 (emphasis added).